IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS C. O'BRIEN, | No. C 11-1180 SI |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION; TRANSFERRING TO WESTERN DISTRICT OF PENNSYLVANIA.** |
| v. | |
| ARCHABBOT DOUGLAS NOWICKI, JACK PERRY, and SAINT VINCENT ARCHABBEY | |
| Defendants. | |

On July 1, 2011, the Court heard oral argument on defendants' motion to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. Defendants also filed a motion to strike plaintiff's prayer for injunctive relief and punitive damages. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court hereby GRANTS defendants' motion to dismiss for lack of personal jurisdiction, and transfers the action to the Western District of Pennsylvania.

**BACKGROUND**

Plaintiff sued Saint Vincent Archabbey, Archabbot Douglas Nowicki, and Jack Perry over the handling of plaintiff's 2010 complaints regarding abuse that priests allegedly inflicted upon him as a Pennsylvania high school student forty years ago.[1] Compl. ¶¶ 5-7; Nowicki's Decl. in Supp. of Defs.'

---

[1] Plaintiff originally sued Saint Vincent Archabbey in the belief that it operated his former school and controlled the investigation into his complaints, but he concedes that The Benedictine Society is the proper institutional defendant in the suit. That is because officials from The Benedictine Society, and not Saint Vincent Archabbey, investigated and communicated with plaintiff regarding the abuse claims.

1 Mot. to Dismiss ¶ 2. The Benedictine Society is a Pennsylvania-based monastic community that
2 operates Saint Vincent Archabbey and coordinated internal investigations into plaintiff's abuse
3 allegations. Nowicki Decl. ¶¶ 3, 15-16; Perry Decl. in Supp. of Defs.' Mot. to Dismiss ¶ 2. In March
4 2010, plaintiff, a long-time resident of Mendocino County, California, notified defendants that he had
5 been abused at Saint Vincent Scholasticate between August 1966 and May 1970. *See* Compl. ¶¶ 4, 8,
6 11. Archabbot Nowicki is a Benedictine Society leader, and Perry is The Benedictine Society's child
7 protection official assigned to plaintiff's school. Nowicki Decl. ¶ 1; Perry Decl. ¶¶ 1-2. Both are
8 Pennsylvania residents and are connected only with plaintiff's allegations over The Benedictine
9 Society's response to his abuse claims, and not with the alleged abuse itself. Nowicki Decl. ¶¶ 18-19;
10 Perry Decl. ¶¶ 3-6.

11 In April 2010, after notifying defendants of his abuse claims, plaintiff asked if any resources
12 could be made available to assist him in coping with the residual emotional effects of his experiences,
13 and defendants offered him the services of a Pennsylvania counselor. Compl., Exh. A, at 2-6. When
14 plaintiff requested a counselor in California, Archabbot Nowicki referred him to Julie Sparacio, a victim
15 assistance coordinator affiliated with the Catholic Church in Santa Rosa, California. *See* Compl., Exh.
16 A, at 9. Sparacio recommended several California counselors to plaintiff and plaintiff began seeing one
17 of them. Compl., Exh. A, at 15-16. Defendants paid for these sessions with Benedictine Society funds.
18 *Id.* Plaintiff alleges, and defendants do not dispute, that defendants only agreed to pay for the services
19 of a counselor they pre-approved. Compl. ¶ 22. Plaintiff complained that he had failed to establish a
20 rapport with his counselor and accuses defendants of undermining his therapy by refusing to allow him
21 to select a different counselor of his own choosing. Compl. ¶¶ 22, 34. He also claims that his counselor
22 discouraged him from litigating and tried to deflect responsibility for his distress away from defendants.
23 Pl.'s Decl. in Supp. of Opp'n to Defs.' Mot. to Dismiss ¶ 6.

24 As a result of plaintiff's frustration and emotional decline over defendants' limiting of his
25 therapy options and handling of the investigation more generally, plaintiff filed a complaint alleging
26 three tort claims: negligence, recklessness, and fraud. He seeks compensatory damages, punitive
27 damages, and injunctive relief.

28 Defendants filed a motion to dismiss for lack of personal jurisdiction, among other causes, and

a motion to strike plaintiff's prayer for injunctive relief and punitive damages.[2]

## LEGAL STANDARD

**Specific jurisdiction**

Plaintiff bears the burden of establishing that the Court has personal jurisdiction over defendants. *See Doe I v. Unocal Corp.* 248 F.3d 915, 922 (9th Cir. 2001). Without an evidentiary hearing, plaintiff may survive a motion to dismiss for lack of personal jurisdiction by making a *prima facie* showing of jurisdiction. *Mattel, Inc. V. Greiner and Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003). Plaintiff makes a *prima facie* showing by presenting facts which, taken as true, establish jurisdiction. *Id*. The Court resolves any factual disputes between each side's declarations in plaintiff's favor when deciding whether a *prima facie* case exists. *Id.*

The Court's jurisdictional inquiry begins with California's long-arm statute, which is "coextensive with the outer limits of due process under the state and federal constitutions," *Data Disc, Inc. v. Systems Tech. Assoc, Inc.*, 557 F.2d 1280, 1286 (9th Cir. 1977) (internal quotations and citations omitted). The inquiry is therefore a "single search for the outer limits of what due process permits." *Forsythe v. Overmyer*, 576 F.2d 779, 782 (9th Cir. 1978).

At issue is whether this Court, in California, may exercise specific jurisdiction over these Pennsylvania-based defendants.[3] Specific jurisdiction exists where defendants have "minimum contacts" with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1946) (internal quotations and citations omitted).

---

[2] Plaintiff filed an objection to reply evidence submitted in Nowicki's Declaration in Support of defendants' Motion to Strike. Plaintiff appears to object to Archabbot Nowicki's declaration that he is competent to testify about plaintiff's academic history with Saint Vincent College. *See* Pl.'s Objection to Reply Evidence, 2:7-20. Since the Court does not rely on the contested evidence in deciding the motion to dismiss, the Court need not reach plaintiff's objection.

[3] Plaintiff does not contest, and defendants have submitted significant evidence demonstrating, that general jurisdiction does not exist over defendants. Defendants' contacts with the forum state are not "substantial" or "continuous and systematic," and are not "the sort that approximate physical presence." *See Bancroft & Masters v. Augusta Nat'l*, 223 F.3d 1082, 1086 (9th Cir. 2000) (internal citations omitted).

3

Within the Ninth Circuit, courts employ a three-part test to decide whether to exercise specific jurisdiction over defendants.

> (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.
> (2) The claim must be one which arises out of or results from the defendant's forum-related activities.
> (3) Exercise of jurisdiction must be reasonable.

*Data Disc, Inc.,* 557 F.2d at 1287.

**"Purposeful direction"**

When plaintiff brings tort claims, as opposed to contract claims, courts within the Ninth Circuit typically inquire whether defendants have "purposefully directed" activity at the forum state to see if they have satisfied the first prong of the three-part specific jurisdiction test. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2003). A court performs this "purposeful direction" inquiry by applying the three-part "*Calder*-effects" test to defendants' allegedly tortious conduct. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010). Defendants satisfy the "*Calder*-effects" test where they have "(1) committed an intentional act, (2) expressly aimed at the forum state, and (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).

**"Claim arises out of defendants' forum-related activity"**

If plaintiff establishes that defendants have "purposefully directed" activity at the forum state based on the "*Calder*-effects" test, plaintiff must satisfy the second step by showing that their claims arise out of defendants' forum-related activity. Here, plaintiff must establish that "but for" defendants' forum-related activity, plaintiff's injuries would not have occurred. *See Gordy v. Daily News, L.P.*, 95 F.3d 829, 835 (9th Cir. 1996). Further, courts "consider only those forum-related activities as they relate to the specific cause of action." *Id.* (internal quotations and citations omitted).

4

**"Reasonableness"**

If plaintiff proves that defendants' conduct satisfies the first two prongs of the specific jurisdiction test, the court must still determine whether defendants "present[] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (internal quotations, emphasis, and citations omitted). Here, courts balance seven factors, with no one factor being dispositive:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132 (9th Cir. 2002).

**DISCUSSION**

**1.     Whether defendants "purposefully directed" activity towards the forum state**

Plaintiff conceded at oral argument that defendants' only alleged conduct relevant to plaintiff's *prima facie* case for specific jurisdiction is defendants' activity related to plaintiff's therapy. That activity included providing plaintiff with three approved therapists and paying for the therapist plaintiff selected in California. *See* Pl.'s Opp'n to Mot. to Dismiss, 8:21-9:9; Compl. ¶¶ 22, 31, 34. Since plaintiff brings tort claims – negligence, recklessness, and fraud – he must satisfy the first prong of the three-part personal jurisdiction test by showing that defendants' conduct constitutes "purposefully directed" activity at the forum state of California. *Schwarzenegger*, 374 F.3d at 802. Such activity is not "purposefully directed" unless it passes the three-part "*Calder*-effects" test. *See Brayton Purcell LLP*, 606 F.3d at 1128.

Construing plaintiff's pro se complaint generously – and assuming that the acts complained of could be tortious – defendants' conduct relating to plaintiff's therapy satisfies the first prong of the "*Calder*-effects" test because each of the actions identified above was intentional. *See Schwarzenegger*, 374 F.3d at 806. Referring plaintiff to a California therapist and paying for his treatment are intentional acts. The issue is admittedly close, but these activities also satisfy the second prong of the "*Calder*-

5

effects" test because defendants directed activity toward plaintiff in California by paying for plaintiff's California therapy services while also limiting plaintiff's choice of therapist. The Ninth Circuit in *Bancroft & Masters* found that the second prong "is satisfied when defendants are alleged to have engaged in wrongful conduct targeted at a plaintiff whom defendant knows to be a resident of the forum state." *Bancroft & Masters*, 223 F.3d at 1087. Here, defendants specifically aimed actions at this individual plaintiff, knowing that he lived in California.

Finally, defendants' conduct arguably satisfies the third prong of the "*Calder*-effects" test because to the extent this conduct caused harm to anyone, defendants knew that the harm would take place in California because they knew plaintiff lived there. The Ninth Circuit in *Brayton Purcell* found that the third prong "is satisfied when defendant's intentional act has foreseeable effects in the forum." *Brayton Purcell LLP*, 606 F.3d at 1131. Defendants knew that plaintiff would feel the effects of their involvement in his therapy in California.

Since plaintiff shows that defendants' conduct arguably satisfies all three prongs of the "*Calder*-effects" test, the Court finds that defendants "purposefully directed" conduct at California.

### 2. Whether plaintiff's claims arise out of defendants' forum-related activity

Plaintiff's allegations also satisfy the test's second requirement because plaintiff's causes of action arise out of defendants' forum-related activity. *Data Disc, Inc.*, 557 F.2d at 1287. Defendants' involvement in plaintiff's California therapy is a "but for" cause of his tort claims.

### 3. Whether it is reasonable for this Court to exercise jurisdiction

Since defendants' activity satisfies the first two prongs, the burden shifts to defendants to show that although they "purposefully directed" activity at the forum-state, it would be unreasonable to hale them to court there. *See Gordy*, 95 F.3d at 835. Here, defendants succeed based on the seven-factor balancing test and in accordance with the Ninth Circuit's reminder that "the touchstone [of a court's inquiry] is whether the 'defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Id.* at 832 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Further, as the Ninth Circuit emphasized in *Gordy*, the seven-

factor balancing test is a "flexible one," and reasonableness is not decided by a "mechanical or quantitative test." *Id.* at 835 (quoting *Insurance Co. of North America v. Marina Salina Cruz*, 649 F.2d 1266, 1270 (9th Cir. 1981)).

The first factor considers "the extent of defendants' purposeful interjection into the forum state's affairs." *Harris Rutsky*, 328 F.3d at 1132. Here, defendants' "purposeful interjection" was quite limited. It is undisputed that, aside from Saint Vincent College's irrelevant alumni contacts, neither The Benedictine Society, nor the two named defendants solicited California residents or affirmatively reached out to anyone in California except for the express purposes of responding to plaintiff and to his request for therapy services in California. Nowicki Decl. ¶¶ 5-14. At bottom, these "interjections" were reactive and defendants had every incentive to limit them as much as possible. They even purposefully limited their "interjections" with California by first offering plaintiff the services of a Pennsylvania therapist, and then by using a Santa Rosa, California church official to find therapist referrals when plaintiff demanded services in California. Unlike in cases like *Gordy*, where a defendant newspaper sent reporters to California and sent its product to several California subscribers continuously and indefinitely, defendants' interactions with the forum state were confined to one matter with one individual whose case they had every reason to conclude quickly and without contemplating an extended relationship within the forum state. *See Gordy*, 95 F.3d at 836. The Court finds, as the Ninth Circuit did, that "the smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise." *Insurance Co. of North America v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981).

Of the remaining reasonableness factors, three weigh in defendants' favor because of defendants' high burden of litigating the case far from Pennsylvania, the efficiency advantage of trying the case where all witnesses to the abuse investigation are located, and the availability of the Western District of Pennsylvania as an alternate forum. *Harris Rutsky*, 649 F.2d at 1132. Two factors weigh in plaintiff's favor because of California's interest in adjudicating the tort claims of one of its residents and because of plaintiff's convenience. *Id.* The remaining factor, the potential conflict between California and Pennsylvania's respective sovereignty, does not favor either side. Id.

Balancing all these factors, the Court finds that it is not reasonable to exercise jurisdiction over

7

defendants in California. Defendants' involvement in plaintiff's California therapy does not constitute "conduct and connection with the forum State ... such that [defendants] should reasonably anticipate being haled into court" in California. *World-Wide Volkswagen Corp.*, 444 U.S. at 297.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion to dismiss for lack of personal jurisdiction. (Docket No. 12). Pursuant to plaintiff's request at oral argument, the Court transfers this action to the Western District of Pennsylvania. 28 U.S.C. § 1631. Ruling on any motions not decided in this order is deferred.

**IT IS SO ORDERED.**

Dated: July 5, 2011

SUSAN ILLSTON
United States District Judge